Johnson, J.
Excluding altogether the evidence which is regarded as exceptionable in the grounds of this motion, and which was expressly reserved by the Chancellor, we concur with him that the merits are with the plaintiff; and that might suffice for the case itself, but there are some questions of law' arising out of it which deserve a more particular con *89 sideration, and I shall notice the circumstances only so far as may be necessary to show their application.
The plaintiff was the creditor of Alston Coiel, for a large amount, for which he had obtained judgment. A ca. sa. was issued, on which he was arrested and committed to jail, where he died insolvent; and the object of this bill was to set aside a bill of sale' executed by him, not long before his arrest, to the defendants, his sisters, for ten negroes, on the ground that it was covinous and intended to defraud the plaintiff and others, his creditors, and to charge the negroes with the payment of his debts. To prove the fraud, Mrs. Terry (late widow of Alston Coiel), and who had formally released her interest in his estate, was sworn for the plaintiff. It appeared that during his confinement Alston Coiel had intended to render a schedule of his estate, with a view to apply for the benefit of the insolvent debtor’s act, and the defendants being apprehensive that he would include these negroes in it, one of them (Elizabeth) entreated this witness to advise him against it, saying *that witness would be p*- „„ as much benefited as herself — she did speak to him on the sub- L' 9 ject, and he stated in reply that the negroes were in truth his own — that defendants had never paid anything for them — that he had evidence which would show it, and would not swear a lie about it.
Two objections are raised to the admissibility of this evidence : First, That being declarations made after the execution of the bill of sale to the defendants, they were inadmissible. Secondly, That the widow of Alston Coiel was an incompetent witness to prove his declarations.
First. The general rule certainly is, that the declarations of third persons are not evidence for or against the parties, nor will the declarations or admissions of a grantor or seller, made subsequently to the grant or sale, be received against the grantee or buyer, because, having been divested by the grant or sale of the thing granted or sold, neither his acts nor declarations can divest -the rights Avhich arise out of them. But where there is a community of interest or design in several, in relation to the same subject-matter, and that fact is clearly established, the acts and declarations of one in reference, to it are received in evidence against the others. Thus the admissions of one partner, in relation to the partnership concerns, are evidence against the others; so of the admissions of one of several joint makers of a promissory note that is not paid ; so in the King v. The Inhabitants of Harwicke, 11 East. 585, where Lord Ellenborough, recognizing the general rule that the admissions of one of several defendants in trespass is not admissible to prove that the others were co-trespassers, yet lays it doAvn, that if they be established to be co-trespassers by other competent evidence, the declaration of one, as to the. motives and circumstances of the trespass, will be evidence against all who are proved to be combined together for the common object. Yery many examples, founded on the same principle, might be drawn from cases of conspiracy,- where the rule is (the fact of conspiracy being proved), the admission of one is evidence against all the conspirators. (See Starkie, part iv., 407, tit. Conspiracy.)
Independently of the particulars before stated, the circumstances of this case create a very strong presumption that there was a combination between the defendants and Alston Coiel to defraud the plaintiff; but that presumption appears to me necessarily to grow out of the facts *90 stated by Mrs. Terry. If the transaction *was bona fide, how were the plaintiffs interested in Alston Coiel’s including or not including those negroes in his schedule ? What motive could they have had to induce his wife to practice upon him to prevent it, unless it was the consciousness that the transaction would not bear investigation when opposed by an honest purpose on his part ? These circumstances sufficiently show the combination, and according to the rule, his declarations were admissible.
Second. In general, the wife cannot be examined for or against the husband, or in any case to which he is a party, or in which he may be interested ; and the rule is so imperious that it cannot be dispensed with even when the’ husband consents that she may be sworn against him. Darker v. Dixer, Ca. Tem. Hardwicke, 264. The only exception allowed is in the case of personal violenec done by the husband to the wife, when she is admitted from necessity : and in Aveson v. Kinnaird, 6 East. 192, it is said arguendo that the dissolution of the marriage by divorce, or even death, will not absolve the wife from the obligation to preserve the secrets of her husband inviolate. But when the husband himself would be a competent witness, the wife may be sworn, and if the party might insist on swearing the husband, and by this means obtain the truth, it would be straining the rule of policy too far to deprive him of the evidence of the wife when that of the husband could not be obtained. Williams v. Johnson, 1 Str. 505; Starkie Ev., part iv. 109. Now Alston Coiel stood indifferent between these parties, for although he was interested, his interest was equally balanced on both sides. If the plaintiff recovered, this would have been so much subtracted from his debt due them, and he would have been liable to the defendants for the value of the negroes — if the defendants, then he would have been still the debtor of the plaintiff in the whole amount. He might, therefore, have been sworn, and consequently the plaintiffs are entitled to the benefit of the wife’s evidence.
Decree affirmed.
O’Neale, J., and Harper, J. concurred.